IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

CHRISTOPHER WILLS,                 )
                                   )
        Movant,                    )  1:05cv775
                                   )  1:99cr396
v.                                 )
                                   )
UNITED STATES OF AMERICA,          )
                                   )
        Respondent.                )

MEMORANDUM OPINION

Before the Court are Christopher Wills' Motion to Compel Discovery and for Specific Performance, in which he seeks discovery of government documents relating to Russell Wiseman and DNA and fingerprint testing of physical evidence to rule out the involvement of members of the MS-13 gang in Zabiullah Alam's disappearance, and his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"), in which he moves to have his conviction and sentence set aside due to ineffective assistance of counsel, prosecutorial misconduct, violations of his right to confront the witnesses against him and his right to trial by jury, as well as the legal inadequacy of the indictment.

For the reasons that follow, Wills' Motion to Compel Discovery and for Specific Performance will be denied and his § 2255 Motion will be dismissed.

I.   Procedural History

     Christopher Wills was initially indicted on November 3,

1999.   Superceding indictments were filed on December 9, 1999,

and February 3, 2000.   The second superceding indictment charged

Wills with one count of kidnapping resulting in death in

violation of 18 U.S.C. § 1201(a)(1) and (2), and one count of

stalking resulting in death in violation of 18 U.S.C. § 2261A,

2261(b)(1) and (2).   Although the indictment did not state that

the government inteded to seek the death penalty, nor allege

particular intent and statutory aggravating factor elements, on

December 28, 1999, the government filed a Notice of Intent to

Seek the Death Penalty in connection with Count I, the kidnapping

charge.   The Notice specifically alleged the necessary threshold

intent element, as well as four statutory aggravating factors and

three non-statutory aggravating factors that the government

intended to prove in its pursuit of a death sentence for Wills.[1]

     On November 5, 1999, two days after the first indictment was

_____

     [1]The Notice of Intent to Seek the Death Penalty specifically
alleged that Wills "intentionally participated in an act,
contemplating that the life of a person would be taken or
intending that lethal force would be used in connection with a
person, other than one of the participants in the offense, and
Zabiullah Alam died as a direct result of the act."   It also
alleged as statutory aggravating factors: death during commission
of another crime, previous conviction of violent felony involving
firearm, previous conviction of other serious offense, and
substantial planning and premeditation.   The Notice additionally
alleged two non-statutory aggravating factors: future
dangerousness of the defendant, and victim impact evidence.

returned, Robert Stanley Powell was appointed to represent Wills. Shortly thereafter, as required by the Federal Death Penalty Act, 18 U.S.C. § 3005, a second attorney, Alan H. Yamamoto, was appointed as co-counsel.  On December 7, 1999, Wills made is first motion to proceed pro se via letter to the Court.  This motion was renewed on December 17, 1999, and granted on December 30, 1999.  However, attorneys Powell and Yamamoto were ordered to remain in the case as stand-by counsel.

On February 15, 2000, the Court dismissed the kidnapping count as legally insufficient.  Because that count was the only death-eligible count in the indictment, Wills was no longer eligible for two attorneys.  The Court vacated the appointment of Robert Stanley Powell as stand-by counsel, leaving Alan H. Yamamoto as Wills' only court-appointed stand-by counsel.  Robert Stanley Powell had no further involvement in Wills' case after February 15, 2000.

After the government sought an interlocutory appeal of the dismissal of Count I, the remainder of the case was stayed pending appeal.  In United States v. Wills, 234 F.3d 174 (4th Cir. 2000) "Wills I," the Fourth Circuit reversed the dismissal of Count I, thereby returning this case to capital status, and entitling Wills to two counsel.  The Court appointed Jonathan Shapiro to assist Mr. Yamamoto as stand-by counsel.  Wills represented himself throughout the guilt phase of the trial.

3

After the jury found Wills guilty on both counts, he allowed counsel to represent him during the penalty phase.  Shapiro and Yamamoto succeeded in defeating a death sentence for the defendant.  On the same day that the jury returned its sentencing verdict, the trial court sentenced Wills to life imprisonment without the possibility of release on each Count.

Wills appealed his conviction and sentence to the Fourth Circuit, which affirmed both the conviction and sentence on October 7, 2003.  United States v. Wills, 346 F.3d 476 (4th Cir. 2003) "Wills II".  The Supreme Court denied Wills' petition for certiorari on June 28, 2004.  Wills v. United States, 542 U.S. 939 (2004).  On June 30, 2005, Wills filed the § 2255 Motion, as well as his Motion to Compel Discovery and for Specific Performance, which are at issue in this Memorandum Opinion.[2]

II. Factual Background

Although the facts of the case have been summarized in detail by the Fourth Circuit in Wills II, and by the government in its response to Wills' § 2255 Motion, for purposes of

---

[2]Although the § 2255 Motion was filed in this court on June 30, 2005, it is still timely because it was mailed on June 28, 2005, one year after Wills' conviction became final.  Pleadings by incarcerated prisoners are deemed filed when the prisoner delivers the pleading to prison officials.  Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991); see also Houston v. Lack, 487 U.S. 266 (1988).  In this case it is clear from the postmark that Wills' pleadings were timely delivered to prison officials.  The government has not argued that the motion was not timely filed.

4

resolving this § 2255 Motion, a very brief review of the key factual allegations is included.

Early in the morning of April 4, 1998, Zabiullah ("Zabi") Alam returned home from work to the apartment he shared with his aunts and a cousin. Upon entering the apartment, Alam saw a burglar in his living room. The burglar fled, and shortly thereafter Wills was arrested by the police and charged with the burglary of Alam's residence. On June 15, 1998, during a preliminary hearing in Fairfax County General District Court, Alam identified Wills as the burglar who he had seen in his apartment on April 4.

On June 18, 1998, Wills placed under Alam's apartment door, a job flyer advertising a grounds keeping job. When Alam called the number on the flyer, he was told to meet someone for an interview at Union Station. Alam told his friends and family that he was going to a job interview at Union Station, and was never seen or heard from again. His abandoned red BMW was found some time later in Prince George's County, Maryland.

III. <u>Discussion</u>

A motion to vacate under § 2255 is not a substitute for a direct appeal, or a means by which a prisoner may raise any and all errors that may have occurred during his trial. It has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on

a final judgment." <u>United States v. Addonizio</u>, 442 U.S. 178, 184 (1979).  To be entitled to relief under § 2255, a prisoner must demonstrate either a lack of jurisdiction by the convicting court, a constitutional error, or a legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." <u>Id.</u> at 185.  It is only these "fundamental" or constitutional errors that the Court may consider on collateral review.

A. Ineffective Assistance of Counsel

In his § 2255 Motion, Wills presents allegedly new evidence, in the form of three affidavits by Russell Wiseman, a fellow inmate at the United States Penitentiary in Lewisburg, Pennsylvania.  In those affidavits Wiseman claims to have been a friend of Zabi Alam, to have seen Alam after his disappearance, and to know that Alam was indebted to members of the MS-13 gang from whom he had bought drugs on credit.  Wiseman claims that Alam is alive and disappeared so as to avoid retribution by MS-13 gang members against himself or his family because of his drug debts.  Wiseman also claims that before Wills' trial he provided this information to Robert Stanley Powell, one of Wills' stand-by counsel, and to Chuck Rosenberg, one of the Assistant United States Attorneys who prosecuted Wills.[3]  Wiseman claims that

---

[3]Chuck Rosenberg is currently employed as the United States Attorney for the Southern District of Texas, and has been nominated to be the United States Attorney for this judicial district.

neither Powell nor Rosenberg followed up on the information, and both stopped taking Wiseman's calls.[4]

In addition, in a statement attached to Wills' Supplemental Filings to His Motion Pursuant to § 2255, Wiseman alleges that on March 29, 2000, while in jail, he was visited by Detective John Stone of the Fairfax County Police Department.  Wiseman alleges that he told Stone some of the same exculpatory information, and that Detective Stone gave Wiseman a hand-written note asking prison officials to allow Wiseman to call the U.S. Attorney's Office in order to speak with Rosenberg.  A photocopy of this note is attached to the supplemental filing.  This third statement by Wiseman is not notarized, and the document attached to Wills' filing is a photocopy that does not even bear an original signature by Wiseman.

In response to these three statements by Wiseman, the government has presented the sworn affidavits of Powell, Rosenberg and Stone.  All three men emphatically state that Wiseman's allegations are a complete fabrication, and each asserts that he never spoke to Wiseman before Wills' trial.  In addition, Stone states that he retired from the Fairfax County

---

[4]The two affidavits through which Wiseman submits these allegations are properly notarized.  However, both affidavits end with "widows," that is, the text that appears on the signature page of the document is entirely generic and does not set forth any of Wiseman's substantive allegations.  "Widows" can be used to facilitate the submission of forged documents by attaching the signature page, signed before a notary, to a different underlying document.

Police Department in September of 1998, and therefore would not have been allowed to enter the Lorton Prison as a Fairfax County Police Detective in March of 2000.  Stone also states that he has viewed a copy of the "note" that he purportedly gave to Wiseman, and that he did not write that note.  The government has also submitted documentation of Wiseman's extensive criminal and prison disciplinary record.

Claims of ineffective assistance of counsel are normally evaluated under the well-known standard of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires the petitioner to show that his counsel's performance was deficient, and that this deficient performance prejudiced the defense.  <u>Vinson v. True</u>, 436 F.3d 412, 418 (4th Cir. 2006) (quoting <u>Strickland</u>, 466 U.S. at 687).  However, Wills argues that the correct legal standard for his case should be <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980), because his attorney had a conflict of interest.  Specifically, he argues that in the fall of 1999 and early months of 2000, Powell was being investigated by the United States Attorney's Office for the Eastern District of Virginia for possible criminal acts, and that Powell's awareness of being under investigation affected his representation of Wills.  To make out a claim of ineffective assistance of counsel under <u>Sullivan</u>, a defendant must only show "that an actual conflict of interest adversely effected his lawyer's performance."  446 U.S. at 348.  Wills asserts that Powell's desire to curry favor with the United

8

States Attorney's Office to better his own personal situation caused him to fail to bring to light the Wiseman evidence or make use of Wiseman's allegations in Wills' defense.

Although the Court recognizes that an evidentiary hearing is usually required when an inmate's § 2255 motion presents evidence that, if believed, would entitle him to relief, <u>United States v. Magini</u>, 973 F.2d 261, 264 (4th Cir. 1992), the Court finds that this case presents the rare situation in which the written evidence submitted by the petitioner is so incredible, and is so convincingly refuted by the government's documentary evidence, that an evidentiary hearing is unwarranted.

As the government argues, and has substantiated by presenting his prison file for in camera review, Russell Wiseman is a felon with a long history of drug use and criminal arrests and convictions.  The records submitted by the government establish that Wiseman is currently serving a 25 year sentence for second degree murder and armed robbery.  His criminal record includes a total of seven prior convictions.  In the Presentence Report prepared to assist with his sentencing for the murder and robbery convictions, Wiseman admitted that before he was arrested on those charges he smoked PCP "every day and all day." Wiseman's prison disciplinary records disclose that he accrued over twenty separate incident reports during a six month period immediately after he was designated to FCI Allentown and that he participated in a group rebellion at the Montgomery County

Detention Center before being transferred into federal custody.

Finally, and most relevant to his role as witness in this case, an Incident Report dated December 23, 2003, documents that Wiseman has, in matters unrelated to this action, executed sworn affidavits in exchange for payment.  The Incident Report describes Wiseman as requesting that an education staff member at FCI Allenwood make photocopies of three pieces of paper that he described as "legal" documents.  The staff member reviewed the papers, and found them not to be "legal" in nature.  On one sheet, a fellow inmate had written, "I am paying Russell Wiseman 4 books of stamps to sign an affidavit that says that I had nothing to do with the razor blade that was found in B-111."  On another sheet is a "Sworn Affidavit" signed by Wiseman stating, "I take full responsibility for the razor blade that was made into a weapon and found in B-111 on October 22, 2003.  Roger A. Sessom #13265-014, who was my cellmate at the time had no knowledge of it."  Thus, Wiseman has a history of accepting payment in exchange for producing sworn affidavits, further eroding the credibility of his allegations regarding Zabi Allam.

In addition to Wiseman's history of taking payment to provide testimony, Wills himself has a history of manufacturing evidence.  During his trial, Wills introduced numerous receipts to support his alibi defense.  (J.A. 874-79, 1068-71, 1335-40.) Diligent investigation by the government revealed that several of the proposed defense exhibits were fraudulent, in that original

10

receipts had been altered to support the defendant's alibi
defense.  In addition, the defendant admitted on the stand to
obtaining and using identification cards in the name of "Michael
Wills" (J.A. 4132-35) and to creating false pay stubs to support
a loan application (J.A. 4117-18).  Given Wills' history of
manufacturing documents for use as evidence, the limited
credibility of Russell Wiseman, and the significant credibility
of U.S. Attorney Rosenberg, Mr. Powell and Detective Stone, the
Court concludes that the Wiseman affidavits are a complete
fabrication and that any potential conflict of interest Powell
may have had did not actually impair his representation of Wills.
Lastly, it is very difficult for Wills to argue credibly that he
was denied his right to counsel when he waived his Sixth
Amendment right to counsel by electing to represent himself.  For
all these reasons, Wills fails to make out a claim for
ineffective assistance of counsel.

       B. Violation of <u>Brady v. Maryland</u>

       Wills relies on the Wiseman affidavits to make a claim under
<u>Brady v. Maryland</u>, the Supreme Court decision which held that
"the suppression by the prosecution of evidence favorable to an
accused upon request violates due process where the evidence is
material either to guilt or to punishment."  373 U.S. 83, 87
(1963).  Wills argues that in failing to notify the defense of
the statements allegedly made to him by Russell Wiseman, AUSA
Rosenberg suppressed material exculpatory evidence, and Wills'

conviction must therefore be reversed.

The government concedes that if Wiseman indeed called Rosenberg before Wills' trial and told him that he had seen Alam alive after the alleged murder and that Alam was hiding out from the MS-13 gang, this would be material exculpatory information under Brady, and the prosecutor would have had a duty to disclose such statements to the defense.  The government similarly concedes that a prosecutor's failure to do so would be cognizable on collateral review.  However, the government vigorously and credibly argues that the Wiseman affidavits are a complete fabrication, and that Wiseman never spoke to Rosenberg during Wills' prosecution.  As explained in more detail, supra, Wiseman is not credible, his allegations are refuted by significantly more credible affiants, and Wills has a history of manufacturing evidence to support his legal positions.  For these reasons, the Court finds that there was no exculpatory evidence provided by Wiseman to AUSA Rosenberg or to Detective Stone and that therefore the prosecutor did not violate his duty under Brady v. Maryland.  Accordingly, there is no basis for reversing Wills' conviction on this ground.

C. Alam's Preliminary Hearing Testimony

Wills next argues that the trial court violated his Sixth Amendment right to confront the witnesses against him, as interpreted by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004), by allowing into evidence the transcript of Zabi

Alam's testimony at the Fairfax County preliminary hearing.  At
the preliminary hearing, Alam identified Wills as the man who
burglarized his aunts' apartment.  Wills objected to the
introduction of the preliminary hearing testimony at trial,
arguing that he had not had the opportunity during the
preliminary hearing to properly cross-examine Alam about his
identification of Wills.  (Trial Tr. 1137, Sept. 17, 2001.)

Although the preliminary hearing testimony of Zabi Alam is
unquestionably "testimonial" under Crawford, it was not admitted
at trial to prove the truth of the matter asserted, and therefore
its introduction did not violate Wills' Confrontation Clause
rights.  Crawford, 541 U.S. at 59 n.9 (the Confrontation Clause
"does not bar the use of testimonial statements for purposes
other than establishing the truth of the matter asserted").  When
admitting the preliminary hearing testimony at trial, the Court
explained, "the issue in this case is not whether or not the
burglary was committed or whether this defendant did the
burglary.  As I understand it, the only relevance of this
transcript is to establish that at a previous court proceeding,
an identification was made of the defendant."  (Trial Tr. 1138,
Sept. 17, 2001.)  Thus, the Court clearly admitted the out of
court statements not for the truth of the matter asserted (that
Wills was in fact the burglar), but rather to establish that Alam
had identified Wills as the burglar, giving rise to a possible
motive for Wills to kill Alam.

In addition, Wills argued both before trial and in post-trial motions that he should have been given the opportunity to attack Alam's identification on its merits.  The Court repeatedly denied these requests, reiterating that Alam's identification of Wills as the burglar was relevant not for its truth but because Alam's "identification at the preliminary hearing gave defendant a sufficient motive to eliminate Alam as a witness against him." (J.A. 1039; see also J.A. 223-24 (pre-trial ruling that a photo spread identification of Wills by Alam was admissible to show motive, not for the truth of the matter asserted).

For these reasons, a new trial is not warranted based on the admission of Alam's preliminary hearing testimony and the admission of other witnesses' testimony regarding Alam's identification of Wills as the man who burglarized his aunts' apartment.

D. Sentence on Count II (the stalking count)

Wills challenges the validity of his sentence on Count II of the indictment, the stalking count, under United States v. Booker, 543 U.S. 220 (2005).  Wills argues that his guideline-based sentence was premised on the judge's factual finding that "the facts of this case established the premeditated, deliberate, and malicious planning of the kidnapping and killing of the victim."  (J.A. 1050.)  In a post trial motion, Wills objected to his sentence under Apprendi v. New Jersey, 530 U.S. 466 (2000), but this argument was rejected by the district court, which

14

relied on the Fourth Circuit's decision in <u>United States v. Kinter</u>, 235 F.3d 192 (4th Cir. 2000).  (J.A. 1048-50.)

Four days before Wills' petition for certiorari was denied, the Supreme Court handed down its decision in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), holding that a sentencing regime that allowed a judge to increase a defendant's sentencing range violated defendants' Sixth Amendment right to trial by jury. Although the <u>Blakely</u> decision created doubt about the constitutional validity of the Federal Sentencing Guidelines, the decision itself did not address the Federal Sentencing Guidelines.  <u>Blakely</u> was extended to the Federal Sentencing Guidelines on January 12, 2005, in <u>Booker</u>.  <u>Booker</u> was decided well after Wills' conviction became final.

The Fourth Circuit, and every circuit to consider the issue, has held that the rule announced in <u>Booker</u>, though a "new rule of criminal procedure," was not a "watershed rule" and therefore is not applicable to federal prisoners whose convictions became final before <u>Booker</u> was decided.  <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005).[5]  Because Wills' conviction became final before <u>Booker</u> was decided, he cannot claim the benefit of that decision.  For these reasons, Wills' contention that the sentence imposed on Count II must be vacated in light of <u>Booker</u>

---

[5]As noted in <u>Morris</u>, nine courts of appeals have held that <u>Booker</u> does not apply retroactively.  429 F.3d at 66 n.2.

is rejected.[6]

E.   Sentence on Count I (the kidnapping count)

Wills challenges his sentence of life imprisonment without the possibility of release, imposed pursuant to the Federal Death Penalty Act, because the indictment did not include the intent and statutory aggravating factors elements which had to be proved to make Wills eligible for the death penalty.  Wills argues that Ring v. Arizona, 536 U.S. 584 (2002), requires that these "elements" be alleged in the indictment and proved to a jury beyond a reasonable doubt.  In Wills' case, although the intent and statutory aggravating factor elements were submitted to the jury which found those elements to have been proved beyond a reasonable doubt, the elements were not alleged in the indictment.

This argument fails for numerous reasons, the foremost of which is that it was fully addressed and rejected on direct appeal.  See Wills II, 346 F.3d 476, 501 (4th Cir. 2003) ("The claim that the various aggravating factors had to be alleged in the indictment is not required by *Ring v. Arizona,* 536 U.S. 584,

---

[6]The Court also notes that, although the defendant's sentence on Count II was based on the judge's determination that the government had proved a premeditated, deliberate killing, the same result was reached by the jury with respect to Count I.  One of the aggravating factors submitted to the jury and found by the jury to have been proved beyond a reasonable doubt was that Wills "committed the kidnapping offense after substantial planning and premeditation to cause the death of Zabiullah Alam." (Special Verdict Form 2).

122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) which does require, however, that they be submitted to the jury, as they were in this case."). Ordinarily, a defendant may not re-litigate in a § 2255 motion issues that were decided against him on direct appeal. See United States v. Roane, 378 F.3d 382, 396 n.7 (4th Cir. 2004) ("Because the Defendants have not pointed to any change in the law that warrants our reconsideration of these claims, we agree with the district court that they cannot relitigate these issues"). However, as Wills points out, after the Fourth Circuit's decision in Wills II, a subsequent panel of the Fourth Circuit held that Ring does require that the intent and statutory aggravating factor elements that make a defendant eligible for the death penalty under the Federal Death Penalty Act be charged in the indictment. United States v. Higgs, 353 F.3d 281, 298 (4th Cir. 2003). Because of the conflicting holdings of Wills II and Higgs, Fourth Circuit law is unsettled as to whether the intent and statutory aggravating factor elements must be charged in the indictment. See United States v. Barnette, 390 F.3d 775, 784-85 (4th Cir. 2004)(following Higgs), vacated on other grounds, 126 S. Ct. 92 (2005); but see id. at 786-88 (Widener, J., concurring)(arguing that Wills II, as the earlier decided case, is the controlling precedent, not Higgs). This Court need not resolve the question of whether Higgs or Wills II is the controlling Fourth Circuit precedent, because even under Higgs,

17

Wills' life sentences are valid.

In Higgs, the Fourth Circuit held that, "with the exception of the fact of prior convictions, those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt."  353 F.3d at 298.  However, the Higgs court went on to apply a harmless error analysis to the government's failure to charge the intent and statutory aggravating factor elements in Higgs' indictment, by examining whether "it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Id. at 304 (quoting Neder v. United States, 527 U.S. 1, 8 (1999)).  The Fourth Circuit noted that the government's written notice listed the intent and statutory aggravating factor elements upon which the government intended to rely, and that those elements had been submitted to the jury and found by the jury to have been proved beyond a reasonable doubt.  Under these circumstances, the Fourth Circuit found that any deficiency in the indictment was harmless.  Id. at 306-07.

The relevant facts of the case at bar are identical to those of Higgs.  Wills was provided with notice of the government's intent to seek a death sentence as early as December 28, 1999,

18

almost two years before his trial.  (Notice of Intent to Seek the
Death Penalty.)  The gateway intent factor and statutory
aggravating factors were submitted to the jury on a special
verdict form that clearly required the jury to state whether each
factor had been proved beyond a reasonable doubt.  (Special
Verdict Form.)  In addition, one of the statutory aggravators
relied on by the government was Wills' prior conviction for a
violent felony involving a firearm.  Under <u>Ring</u> and <u>Higgs</u>, prior
convictions need not be alleged in the indictment, submitted to
the jury, and proved beyond a reasonable doubt.  Thus, even if
Wills' claim is analyzed under <u>Higgs</u> rather than <u>Wills II</u>, it is
clear beyond a reasonable doubt that the omission of these
factors from the indictment in no way contributed to the verdict
obtained.  Moreover, the ultimate verdict was favorable to Wills.
Despite finding the intent and statutory aggravating factors, the
jury recommended a sentence of life imprisonment without the
possibility of release, rather than death.  Therefore, the error,
if it was error, is harmless.[7]

---

[7]Wills appears to argue that there was no jury finding as to
the gateway intent and statutory aggravating factors that
rendered him eligible for death. (Mot. to Vacate 42.)  This
contention is completely without merit.  The Special Verdict Form
specifically required the jury to indicate whether it found
beyond a reasonable doubt that Wills "intentionally participated
in an act of kidnapping, contemplating that the life of Zabiullah
Alam would be taken and/or intending that lethal force would be
used in connection with the kidnapping of Zabiullah Alam, and
that the victim Zabiullah Alam died as a direct result of the
kidnapping." (Special Verdict Form 1.)  It also required the jury

F.  Additional Grounds

In his Supplemental Filing and Reply Memorandum, Wills alleges additional grounds for reversing his conviction and sentence.  The Court finds that all of these additional arguments are also without merit.  For example, Wills argues that this Court may and should decline to follow the Fourth Circuit's ruling in Wills I, 234 F.3d 174 (4ᵗʰ Cir. 2000), which interpreted the statutory phrase "transported in interstate commerce" adversely to Wills.  Wills I is the law of this case, and is binding precedent which this Court is duty-bound to follow.  The Court cannot disregard the Fourth Circuit's interpretation of the federal kidnapping statute, the Federal Death Penalty Act, or any other rulings in this case.  The additional arguments made by Wills in his later filings are similarly without merit.

G.  Motion to Compel Discovery and for Specific Performance

In his Motion to Compel Discovery and for Specific

---

to state whether it found either of two statutory aggravating factors proved beyond a reasonable doubt.  These statutory aggravators were that Wills "has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm against another person" and that Wills "commited the kidnapping offense after substantial planning and premeditation to cause the death of Zabiullah Alam."  The jury indicated that it found both statutory aggravating factors to have been proved beyond a reasonable doubt.  (Special Verdict Form 2.)

Performance, Wills also relies on the Russell Wiseman evidence. Based on Wiseman's statements, Wills requests discovery into the actions of attorneys Rosenberg and Powell, evidence in the possession of the government regarding Wiseman, and DNA and fingerprint testing of physical evidence in the case to rule out the involvement of the MS-13 gang members from whom Alam allegedly bought drugs.  As discussed supra, Wiseman's testimony is inherently incredible, and is extensively refuted by the affidavits of Rosenberg, Powell, and Stone.  In addition, Wills has a long history of manufacturing evidence to support his claims.  In light of this evidence, the Court finds no basis on which to order discovery or DNA and fingerprint testing of the physical evidence.  For these reasons, Wills' Motion to Compel Discovery and for Specific Performance will be denied.

III. Conclusion

For these reasons, Wills' Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 will be dismissed and his Motion to Compel Discovery and for Specific Performance will be denied by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 16th day of March, 2006.


_____/s/_____
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

21